Filed 2/28/13  Pantoja v. Countrywide Home Loans CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CORNELIO PANTOJA,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>COUNTRYWIDE HOME LOANS, INC.,<br>et al.,<br><br>    Defendants and Respondents. | H036232<br>(Santa Clara County<br>Super. Ct. No. CV138528) |

Appellant Cornelio Pantoja appeals from an order by the Santa Clara County Superior Court sustaining respondents Countrywide Home Loans Inc., Bank of America Corporation, Old Republic National Title Company, and Old Republic Default Management Services' (collectively "Countrywide") demurrer to his third amended complaint without leave to amend.  Pantoja's 18-page complaint alleged only one cause of action, that Countrywide committed unfair business practices and violated California Business and Professions Code sections 17200 and 17500 et seq. by failing to inform Pantoja of transfers of his promissory note to a different beneficiary, failing to provide a proper declaration under California Civil Code section 2923.5,[1] failing to explore options to avoid foreclosure as provided under section 2923.5, and failing to engage in good faith

---

[1] Further unspecified statutory references are to the Civil Code.

loan modification or workout discussions pursuant to section 2923.6.  This case was previously removed to federal court, which resulted in a published opinion (*Pantoja v. Countrywide Home Loans, Inc.* (N.D.Cal. 2009) 640 F.Supp.2d 1177) after the court dismissed the complaint with leave to amend.  This case was returned to state court after Pantoja amended his complaint to omit any federal claims.

For the reasons set forth below, we find that Pantoja sufficiently alleged a cause of action in his complaint.  We will accordingly reverse the trial court's judgment in favor of Countrywide with directions to overrule the demurrer and order Countrywide to respond.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Pantoja's House and Mortgage*

In June 2006, Pantoja purchased a house in Morgan Hill.  In order to purchase the house, Pantoja received a loan in the amount of $514,400 from Greenpoint Mortgage Lending.  Pantoja executed a deed of trust on the house to secure the financing.  At the time of the financing, Pantoja was told that his monthly mortgage payments would be $3,054 per month and that the mortgage would be refinanced after six months into a lower monthly payment.  Pantoja was informed that if no refinance took place, at worst he would be obligated to pay $3,054 per month for 30 years, with no change in the interest rate.

Contrary to the information provided to Pantoja, the terms of the mortgage actually stated that the interest rate would remain at 7.125 percent per year for the first three years, resulting in a $3,054 per month mortgage payment.  After the first three years, the interest rate could be adjusted upwards by five percentage points to 12.125 percent.  After a further six months, the interest rate would cap at 13.125 percent.

Pantoja made monthly mortgage payments until June 2008 when he became delinquent.  On October 16, 2008, Old Republic Default Management Services recorded a notice of default.  Accompanying the notice of default was a declaration of compliance

2

with section 2923.5, which included a marked checkbox next to the statement: "The beneficiary of beneficiary's authorized agent has contacted the borrower pursuant to Civil Code section 2923.5(c) (contract provision to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure'). State the date 'contact' with the borrower(s) were accomplished: Date of contact began on or before September 6, 2006." Contrary to the declaration's claims, Pantoja alleged in his complaint that Countrywide never contacted him to assess his financial situation at least 30 days prior to recording a notice of default, nor did they engage in good faith discussions about loan modifications or other options to avoid foreclosure.

On December 9, 2008, Countrywide notified Pantoja that it had taken over the servicing of his mortgage from Greenpoint. On January 30, 2009, Old Republic Default Management filed a notice of trustee sale. The notice of trustee sale did not include a declaration as mandated under section 2923.5, though it did state that the declaration was fulfilled when the notice of default was recorded. Pantoja submitted paperwork to Countrywide in March 2009 to seek a loan modification, though no modification was given.

### Pantoja's Complaints and Countrywide's Demurrers

Pantoja filed an ex parte application for a temporary restraining order to stop the foreclosure sale, which was granted on March 30, 2009. Pantoja filed a complaint in state court for declaratory judgment, wrongful foreclosure, unfair business practices, and equitable estoppels the same day he filed the ex parte application. On April 13, 2009, Countrywide removed the case to the United States District Court on the grounds that there was a federal question.[2] Countrywide then moved to dismiss the complaint, which the district court granted with leave to amend. (See *Pantoja v. Countrywide Home*

_____

[2] Pantoja's original complaint referenced several federal statutes, including the Truth in Lending Act (15 U.S.C. § 1639), and the Home Equity Protection Act (15 U.S.C. 1602 et seq.).

*Loans, Inc.*, *supra*, 640 F.Supp.2d 1177.)  Pantoja amended his complaint to omit references to federal statutes, and filed a first amended complaint on July 29, 2009.  The district court remanded Pantoja's case back to state court.  Countrywide filed a demurrer to Pantoja's first amended complaint, which was sustained with leave to amend.

Pantoja then filed a second amended complaint.  Countrywide again demurred.  The trial court sustained the demurrer with leave to amend only the fourth cause of action for an alleged violation of the Unfair Competition Law (UCL).  (Bus. & Prof. Code, §§ 17200 et seq.)

Pantoja thus filed a third amended complaint, alleging only one cause of action under the UCL.  Pantoja alleged that Countrywide committed unfair business practices by failing to advise him of any transfers of the promissory note, failing to identify the beneficiary in the notice of default required under section 2924c, subdivision (b)(1), failing to properly identify the beneficiary in the notice of sale, failing to provide a proper declaration pursuant section 2923.5, failing to assess Pantoja's financial condition at least 30 days prior to recording a notice of default, failing to explore options to avoid foreclosure pursuant to section 2923.5, subdivision (a)(2), failing to provide a proper declaration in the notice of trustee sale under section 2923.5, subdivision (b), failing to engage in good-faith loan modification or workout discussions under section 2923.6, unlawfully recording a notice of trustee sale on January 30, 2009, and by recording false documents with the County Recorder.

Countrywide demurred to Pantoja's third amended complaint.  Pantoja opposed the demurrer, but the trial court sustained the demurrer without leave to amend.  The trial court entered a judgment in Countrywide's favor on September 10, 2010.  Pantoja filed a timely notice of appeal on November 2, 2010 on the judgment, arguing that his complaint sufficiently stated a cause of action.

**STANDARD OF REVIEW**

4

On appeal we review the legal sufficiency of the complaint de novo. (*Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 438-439.) When reviewing a demurrer, the allegations of the complaint must be liberally construed and we must assume the truth of all material facts properly pleaded in the complaint unless they are contradicted by judicially noticed facts. (Code of Civ. Proc., §§ 430.30, subd. (a), 430.70, 452.) A demurrer should not be sustained if the plaintiff has alleged sufficient facts, as here, to justify relief.

## DISCUSSION

Succinctly, the question on appeal is whether or not Pantoja alleged sufficient facts in his complaint to justify relief on his sole claim that Countrywide engaged in unfair business practices under the UCL. The UCL prohibits businesses from engaging in "unfair, deceptive, untrue or misleading advertising," and any "unlawful, unfair or fraudulent business practice." (Bus. & Prof. Code, §§ 17200 et seq.) This governs acts that are unlawful, but is more expansive and also includes practices that are unfair or deceptive even if they are not violative of a specific law. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)

Thus in order for Pantoja's claims to succeed past the demurrer stage, he must have alleged facts that either show a violation of a statute or have alleged facts that demonstrate Countrywide's business practices are "unfair, unlawful, or fraudulent." (*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886, 895.) Though a determination of what is considered unfair or fraudulent is often considered a question of fact which precludes a court from sustaining a demurrer, courts have affirmed judgments of dismissals when the complaint does not allege facts showing that the business is unfair, unlawful or fraudulent. (*Ibid.*) Furthermore, in order to bring a proper claim under the UCL the plaintiff must have standing. This means that Pantoja must have suffered an injury and lost either money or property as a result of the allegedly unfair practices. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-321

5

(*Kwikset*).) We address each of these requirements in turn, and find that Pantoja has sufficiently alleged facts to constitute a UCL claim.

### 1. Violation of a Statute

A cause of action is stated for a violation of the UCL if factual allegations show that Countrywide violated a statute. (*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, *supra*, 92 Cal.App.4th 886, 895.) Pantoja alleged that Countrywide violated sections 2923.6 and 2923.5 in his complaint. For the reasons set forth below, we find that though Pantoja failed to sufficiently allege a violation of section 2923.6, he sufficiently alleged a violation of section 2923.5.

#### a. *Violation of Civil Code § 2923.6*

First, Pantoja claimed that Countrywide violated section 2923.6 by failing to offer him some sort of loan modification or workout plan. The specific text of the statute reads that:

"(a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed *to all parties in a loan pool, or to all investors under a pooling and service agreement, not to any particular party in the loan pool or investor under a polling and servicing agreement*, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement *if it agrees to or implements a loan modification or workout plan* for which both of the following apply:

"(1) The loan is in payment default, or payment default is reasonably foreseeable.

"(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis." (§ 2923.6, subd. (a), emphasis added.)

This statutory language does not expressly implicate that servicers have a mandatory duty to offer borrowers, like Pantoja, a loan modification or workout plan. Instead, it creates an obligation for the servicer to offer borrowers a modification or

workout plan if doing so would provide a net financial benefit to all parties in a loan pooling or servicing agreement. Notably, Pantoja himself did not allege that he is either a party to a loan pooling or servicing agreement or an investor in a loan pooling or servicing agreement.

Further, there is no mandatory requirement forced onto loan servicers to strike agreements with borrowers, and as other appellate courts have noted that there is no duty imposed under section 2923.6. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 222-223, fn. 9 (*Mabry*).) The Fourth Appellate District in *Mabry* specifically reasoned that section 2923.6 "merely expresses the *hope* that lenders will offer loan modifications on certain terms." (*Mabry*, *supra*, 185 Cal.App.4th at p. 222, fn. omitted.) As a result, under *Mabry*, Pantajo does not have a private right of action against Countrywide for an alleged violation of section 2923.6 simply because Countrywide did not offer him a loan modification. The express language of the statute precludes Pantoja from having a claim unless he is either a party to a loan pooling or servicing agreement or an investor in a loan pooling or servicing agreement, which Pantoja did not claim in his complaint. Given the facts alleged in the complaint, we find that Pantoja has not alleged a violation of section 2923.6.

### b. *Violation of Civil Code § 2923.5*

Pantoja also alleged that Countrywide violated section 2923.5, subdivisions (a), (b) and (c). Section 2923.5 bars mortgagees, trustees, beneficiaries, or authorized agents from filing a notice of default pursuant to section 2924 until 30 days after "initial contact" or 30 days after satisfying the due diligence requirements further specified by subdivision (g) of section 2923.5. Under section 2923.5, subdivision (a)(2), a mortgagee, beneficiary, or authorized agent "shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the

borrower that he or she has the right to a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days."

Pursuant to section 2923.5, subdivision (b), a "notice of default recorded pursuant to section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of 'borrower' pursuant to subdivision (h)." Section 2923.5, subdivision (c) mandates that mortgagees, trustees, beneficiaries, or authorized agents that already filed a notice of default after the enactment of the Civil Code section and who have not filed a notice of rescission should file a declaration that "[s]tates that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure," and "[l]ists the efforts made, if any, to contact the borrower in the event no contact was made."

In his third amended complaint, Pantoja claimed that Countrywide violated section 2923.5, subdivision (a) because it "did not undertake good faith efforts [to] assess [his] financial situation and nor [*sic*] to explore options for [him] to avoid foreclosure." Pantoja also claimed that Countrywide violated section 2923.5, subdivision (b) when it failed to file a declaration based on personal knowledge. Pantoja characterized this declaration as hearsay that could not, on its face, satisfy the requirements set forth under section 2923.5, subdivisions (a) and (b). The purported declaration is included as an exhibit attached to the complaint located on the third page of the notice of default, where a checkbox was marked next to a paragraph that stated: "The beneficiary or beneficiary's authorized agent has contacted the borrower pursuant to Civil Code § 2923.5(c) (contact provision to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure'). State the first date 'contact' with the borrower(s) was accomplished: Date of contact began on or before September 06, 2006." The notice of default was signed on October 10, 2008. The notice of trustee sale simply states that

8

"[t]he Declaration pursuant to California Civil Code, Section 2923.5(a) was fulfilled when the Notice of Default was recorded on 10/17/2008."

Pantoja's complaint alleged several violations of section 2923.5, including the substance of the declaration, the timing of the declaration, and the lack of appropriate contact pursuant to the section. We find that Pantoja sufficiently alleged that there was a lack of appropriate contact pursuant to section 2923.5, rendering Countrywide's actions a violation of the statute.

### i.    *Substance of the Declaration*

Pantoja contends on appeal that Countrywide failed to satisfy the statutory requirements of section 2923.5, subdivision (b) since its declaration was not signed under penalty of perjury and did not include a detailed factual statement. Pantoja argues that in order to serve the statutory purpose the declaration must be detailed and based on personal knowledge. The majority of Pantoja's opening brief focuses on this alleged violation.

However, Pantoja's argument that Countrywide's declaration violates section 2923.5, subdivision (b) goes against the holding of the Fourth Appellate District in *Mabry*, *supra*, 185 Cal.App.4th 208.[3] The appellate court in *Mabry* held that section 2923.5 does require that a declaration needs to be executed under penalty of perjury or an oath. (*Mabry*, *supra*, 185 Cal.App.4th at pp. 232-234.) The court also concluded that a declaration does not need to be custom drafted for each situation, and that a declaration that tracks the language of the statute was sufficient. (*Id*. at p. 235.) The *Mabry* court came to this conclusion by citing to the dictionary definition of "declaration," and noted that under the multiple definitions provided by the Oxford English Dictionary there were none that required a statement be made under oath or penalty of perjury. (*Id.* at p. 233.)

---

[3] Federal courts also follow *Mabry*'s holding that section 2923.5 does not require an individualized declaration. (See *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D.Cal. 2011) ___ F.Supp. __ [2011 U.S. Dist. LEXIS 62152].)

Additionally, the court reasoned that the Legislature knows how to enact statutes that require declarations or statements be made under the penalty of perjury, as it has done so in the past in other laws governing mortgages, but yet did not include such language in section 2923.5. (*Ibid.*)

The *Mabry* court also found that the structure of section 2923.5, subdivision (b) "belies any insertion of a penalty of perjury requirement" because "too many people are necessarily involved in the process for any one person to likely be in the position where he or she could swear that all three requirements of the declaration required by subdivision (b) were met." (*Mabry*, *supra*, 185 Cal.App.4th at p. 233.)

Countrywide's declaration does track the language of section 2923.5. Under the reasoning set forth in *Mabry*, we do not find that the substance of the declaration constituted a clear violation of section 2923.5.

### ii. Timing of the Declaration

Pantoja also points out that according to Countrywide's declaration, contact pursuant to section 2923.5 occurred on or before September 6, 2006, even though section 2923.5 was enacted in July 8, 2008. Furthermore, according to the declaration, the contact by Countrywide occurred prior to Pantoja's default, as he defaulted in 2008.

It is paradoxical for Countrywide to stand on a declaration that contact pursuant to section 2923.5 took place before the statute was enacted. It also seems rather fruitless for a lender to contact a borrower while the borrower is making timely mortgage payments to discuss options to avoid foreclosure and to assess the borrower's financial situation.

We recognize that it is not the role of this court to "broaden or narrow the scope of [a] provision by reading into it language that does not appear in it or reading out of it language that does." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545.) Nonetheless, the legislative intent of section 2923.5 is clear. The Legislature enacted section 2923.5 in response to the "unprecedented threat to [California's] state economy and local economies because of skyrocketing residential property foreclosure rates in [the

10

state].” (Stats. 2008, ch. 69, § 1.)  The Legislature articulated that it was important to the state’s economic health to modify foreclosure processes so that “mortgagees, beneficiaries, or authorized agents” would be required to “contact borrowers and explore options that could avoid foreclosure.”  (*Ibid.*)  In doing so, the Legislature expressed the desire to change the foreclosure process so that avoidable foreclosures could be avoided successfully.  (*Ibid.*)

Arguably, contacting borrowers to explore options to avoid foreclosure and to assess the borrower’s financial situation *before* the borrower defaults while they are still presumably in good financial health is likely not an efficient way to avoid foreclosures. This practice does not advance the legislative purpose of section 2923.5.  The aim and purpose of the statute is clearly set forth.  This could not have been known prior to the statute’s enactment, which is when the alleged notice took place.

### iii.     *Appropriate Contact Pursuant to Section 2923.5*

Pantoja’s third amended complaint also briefly alleged the fact that Countrywide failed to assess his financial situation and also failed to explore foreclosure options pursuant to section 2923.5.  In his third amended complaint, Pantoja alleged that Countrywide “did not undertake good faith efforts [to] assess Cornelio Pantoja’s financial situation and nor did they explore options for [Pantoja] to avoid foreclosure.”  Pantoja also alleged that Countrywide failed to “explore options to avoid foreclosure at least 30 days prior to recording a notice of default, as required by California Civil Code § 2923.5(a).”

This would be a clear violation of section 2923.5, subdivision (a), as it is an explicit requirement that lenders contact borrowers, or at least attempt to contact borrowers, to discuss foreclosure options 30 days prior to the notice of default.  Pantoja’s opening brief does not argue this one point, and he only mentions it briefly in his reply, where he argues that “no one attempted to commence even sham efforts to assess his financial condition or explore options to avoid foreclosure until after the Notice of

11

Trustee Sale had been recorded." Absent a few sentences in his complaint and in his reply brief, there are no other factual allegations that Countrywide failed to contact him about his potential options pursuant to section 2923.5. However, since our review is de novo, Pantoja's persuasive tactics are of no moment. Though issues raised for the first time in a reply brief, or not raised at all, are ordinarily not considered on appeal, as the reviewing court this court has the authority to reach any issues warranted by an appropriate disposition of the matter. (*Burns v. Ross* (1923) 190 Cal. 269, 275-276; see, e.g., *Greenlining Institute v. Public Utilities Comm.* (2002) 103 Cal.App.4th 1324, 1329, fn. 5.)

We note the error in sustaining the demurrer and thus need not reach the actual question as to whether or not appropriate contact took place, which would be left to the parties' evidence, both as to the sufficiency and the timeliness of the notice.

### iv. Summary: Possible Violation of Section 2923.5

In sum, we find that a de novo review of Pantoja's third amended complaint demonstrates that it was error to sustain Countrywide's demurrer without leave to amend. Pantoja alleged as fact that Countrywide failed to contact him to assess his financial condition or explore options for foreclosure. We must assume that all facts properly pleaded in the complaint are true unless contradicted by judicially noticed facts when reviewing the complaint at the demurrer stage. (Code Civ. Proc., §§ 430.30, subd. (a), 430.70, 452.) We therefore find that Pantoja has alleged a potential violation of section 2923.5 in his complaint as to the timeliness and sufficiency of the contact pursuant to section 2923.5.

### 2. Unfair Business Practices

Pantoja may also sufficiently allege a cause of action under the UCL if he alleges facts that show that Countrywide engaged in unfair business practices. While we find that Pantoja already sufficiently alleged a violation of a statute, we further find he also

12

sufficiently alleged that Countrywide engaged in unfair business practices under the UCL.

Specifically, the UCL prohibits businesses from engaging in "unfair, deceptive, untrue or misleading advertising," and any "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, §§ 17200, 17500.) This governs acts that are unlawful, but is also more expansive and also includes practices that are unfair or deceptive even if they are not violative of a specific law. (*Cel-Tech*, *supra*, 20 Cal.4th 163, 180.)

This broad scope exists because the " '[t]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " [Citation.]' " (*Cel-Tech*, *supra*, 20 Cal.4th at p. 181.) As a result, " 'In permitting the restraining of all "unfair" business practices, [former] section 3369 [today section 17200] undeniably establishes only a wide standard to guide courts of equity; as noted above, given the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate.' [Citation.] '[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited [citations], since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery.' [Citation.]" (*Ibid.*, fn. omitted)

Under the broad definition of an unfair business practice, even if Pantoja's complaint fails to allege a statutory violation, practices that are "unfair, unlawful, or fraudulent" that are not specifically violative of a particular statute may still constitute a violation. (*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, *supra*, 92 Cal.App.4th 886, 895.) A determination of what is considered unfair or fraudulent is most frequently a question of fact, which usually precludes a court from sustaining a demurrer. (*Ibid.*)

13

The "unfairness" prong of the UCL has been described as " ' "intentionally broad." ' " (*Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157.) However, the law is not unlimited. "Courts may not simply impose their own notions of the day as to what is fair or unfair. . . . if the Legislature has permitted certain conduct or considered a situation and concluded 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.' " (*Cel-Tech*, supra, 20 Cal.4th 153, 182.) Some Courts of Appeal have defined "unfairness" as occurring "when [a practice] offends an established public policy or when [a] practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (*People v. Casa Blanca Convalescent Homes* (1984) 159 Cal.App.3d 509, 530.)

As our Supreme Court reasoned in *Cel-Tech*, "we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." The court then adopted the test that if a plaintiff claims to have suffered an injury due to an unfair act, the unfair act must constitute some sort of conduct that violates the spirit or policy of antitrust law, is essentially a violation of the law, or somehow significantly threatens competition. (*Cel-Tech*, *supra*, 20 Cal.4th 153, 187-188.)

It is probably "unfair" for a lender to contact a borrower pursuant to section 2923.5 to assess their financial condition and to consult them about options for foreclosure *prior* to their default, as in Pantoja's case. Nonetheless, we do not need to determine if there indeed *was* an unfair business practice under the UCL. Our determination simply ends after finding that there is a factual allegation in the complaint that could sustain a cause of action for an unfair business practice. After all, determining whether or not a business practice is indeed unfair is a conclusion left for the trial court, after a consideration of the evidence. (See *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, *supra*, 92 Cal.App.4th 886, 895.)

14

It is not our place to determine whether or not Pantoja's alleged claim that Countrywide failed to contact him to assess his financial situation, and that they failed to partake in good-faith efforts to enter into a loan modification agreement to avoid foreclosure, actually constitute a violation of the UCL.  It is enough that Pantoja alleges that there was no contact pursuant and a failure to assess under section 2923.5.  That by itself demonstrates it was error by the trial court to sustain a demurrer without leave to amend.

### 3. Standing Under the UCL

Countrywide argues that the demurrer was appropriately sustained because Pantoja lacked standing to bring a claim under the UCL.  As we previously discussed, in order for a plaintiff to bring a private claim of action under the UCL they must allege that they suffered an economic injury and has lost either money or property as a result of the allegedly unfair practices.  (*Kwikset*, *supra*, 51 Cal.4th 310, 320-321.)  However, upon review of Pantoja's complaint we find that he does adequately allege economic injuries to give him standing to bring his complaint.

In paragraph 79 of his third amended complaint, Pantoja stated he "has suffered harm and monetary loss as a result of defendant's unfair business practices.  He was denied the benefits and protections of California Civil Code §§ 2923.5 and 2923.6. Defendants falsely listed a total of $560,801.38 as due in their January 2009 notice of trustee sale, on a loan of $514,000 and in which plaintiff has tendered payments for two years.  [Countrywide's] demands included fees and expenses, which are inaccurate and which would not have existed had [Countrywide] complied with California Civil Code §§ 2923.5 and 2923.6.  Plaintiff has also had to incur substantial legal expenses for the enforcement of his legal rights.  Plaintiff has thereby suffered direct monetary loss."

Pantoja additionally alleged that he was misled as to the terms of the loan agreement, and that he was told his mortgage payments would only be $3,054 for the duration of the repayment period.  Pantoja further asserted that defendants "sought to

15

impose upon [Pantoja] a mortgage agreement which carried excessive interest, charges and fees and whose true nature were and still concealed from plaintiff" and that he was charged inflated and unlawful fees, which if he refused to pay would have resulted in a non-judicial foreclosure sale. Pantoja additionally made the factual allegation that Countrywide intentionally misled him in the pursuit of profit.

We find that these allegations satisfy the requirement of standing under the UCL. As our Supreme Court explained in *Kwikset*, " '[i]n 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" (former § 17204, as amended by Stats.1993, ch. 926, § 2, p. 5198), now private standing is limited to any "person who has suffered injury in fact and has lost money or property: as a result of unfair competition [citations]." ' " (*Kwikset*, *supra*, 51 Cal.4th 310, 320-321.) The intended result of this narrowing of standing was to stem the flow of litigation brought by individuals who did not actually use, purchase, or have other dealings with the defendant company's products or services. (*Ibid.*) However, the court continued to plainly preserve standing for those that actually lost money or were otherwise economically injured in business dealings with the defendant company as a result of their unfair practices. (*Ibid.*)

The *Kwikset* court further detailed several ways in which plaintiffs could demonstrate an economic injury. "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. [Citation.] Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of 'lost money or property,' nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm." (*Kwikset*, *supra*, 51 Cal.4th 310, 323.) Accordingly, the concept of "lost money or property" was not meant

to take on a limited definition. As the *Kwikset* court reasoned, economic harms may come in a variety of different forms, and is amorphous.

Countrywide's contention that Pantoja did not allege sufficient economic injury to justify standing is without merit. Pantoja's complaint does allege that he suffered a real economic loss from the overcharge of fees, that he entered into the mortgage agreement based upon intentional misrepresentations that the mortgage payments would remain at $3,054 for the duration of the loan, and that he is now facing foreclosure on his home. These factual allegations demonstrate the existence of an economic injury. Further, Pantoja sufficiently stated in his complaint that these economic injuries arose from Countrywide's alleged violations of the UCL. We accordingly find that Pantoja did allege sufficient economic injury in his complaint, and that he therefore possesses the requisite standing to bring suit under the UCL.

### 4. Doctrine of Strict Compliance and Pantoja's Other Arguments on Appeal

Since the demurrer was sustained in error, there is no need for us to address Pantoja's additional claims on appeal, such as his argument that Countrywide violated the doctrine of strict compliance and violated the procedure required for non-judicial foreclosures set forth in Civil Code section 2924. Pantoja has sufficiently stated a cause of action for a violation of the UCL in his third amended complaint.

### DISPOSITION

The trial court's order sustaining Countrywide's demurrer without leave to amend is reversed. The trial court is ordered to overrule the demurrer and order Countrywide to respond. Pantoja is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

17

_____

RUSHING, P.J.

I CONCUR:

_____

PREMO, J.

BAMATTRE-MANOUKIAN, J., Concurring and Dissenting—

I concur with the majority's conclusion that plaintiff Cornelio Pantoja has failed to state a cause of action arising under former Civil Code section 2923.6.[4] I respectfully dissent from the majority's conclusion that plaintiff has adequately alleged a cause of action arising under a former version of section 2923.5 subdivision (a), although I would allow Pantoja leave to amend to attempt to allege such a cause of action.[5]

## A. THE PLEADINGS

Pantoja has appealed from a judgment of dismissal upon the trial court's order sustaining a demurrer to the third amended complaint ("complaint") without leave to amend. In reviewing a general demurrer, appellate courts must " 'liberally construe[]' " the allegations of the complaint in order to determine "whether the plaintiff has alleged sufficient facts to justify any relief." (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 952-953, quoting Code Civ. Proc., § 452.)

Under the heading of "UNFAIR BUSINESS PRACTICES" in paragraph 78 of the complaint, Pantoja alleged that the defendants had committed the following series of unfair business practices: "[1] By failing to advise Cornelio Pantoja as to any transfers of the promissory note to any alleged beneficiary which deprived Cornelio Pantoja from knowing the identity of any alleged new beneficiary; [2] by failing to properly identify the beneficiary in the notice of default, as required by California Civil Code §2924c(b)(l); [3] by failing to properly identify the beneficiary in the notice of trustee sale; [4] by failing to provide a proper 2923.5 declaration in the notice of default, a core jurisdictional

---

[4] All further statutory references are to the Civil Code unless otherwise indicated.

[5] Sections 2923.5 and 2923.6 have been substantially modified by amendments effective January 1, 2013. (Stats. 2012, ch. 86, § 4 & ch. 87, §§ 4, 7.) The claims in this case arise under the former versions of these statutes. All references to these two sections are to the former versions of these statutes before they were amended. (See Stats. 2009, ch. 43, §§ 1, 2.)

requirement to the conduct of a non-judicial foreclosure; [5] by having failed to assess Cornelio Pantoja's financial condition at least 30 days prior to recording a notice of default, as required by California Civil Code §2923.5(a); [6] by failing to explore options to avoid foreclosure at least 30 days prior to recording a notice of default, as required by California Civil Code §2923.5(a); [7] by failing to provide a proper 2923.5(b) declaration in the notice of trustee sale; [8] by failing to provide a proper 2923.5(c) declaration in the notice of trustee sale; [9] by failing to engage in loan modification or workout discussions in good faith as required by California Civil Code §2923.6; [10] by unlawfully recording a notice of trustee sale on or about January 30, 2009; [11] By [*sic*] attempting to go to sale without insuring that the beneficiary for whom the servicer and trustee worked had in its possession and was the owner of original of the promissory note with endorsements; [12] by violating California Penal Code §115.5, recording false documents with the County Recorder."

Paragraph 78 is a compilation of the specific unfair business practice allegations that precede it, which I will quote where relevant below. Pantoja's 100-page opening brief on appeal focuses primarily on two unfair business practices: alleged violations of sections 2923.5, subdivision (b) and 2923.6.

**B. SECTION 2923.6**

As to section 2923.6, the complaint alleged the legal conclusion that this section "requires that the defendants have pursued a loan modification in good faith prior to the recording of a notice of default or trustee sale" (Par. 57) and the factual conclusion that "[d]efendants did not comply with California Civil Code §2923.6" (Par. 59). Appellate courts do not assume the truth of conclusions of law. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

I concur with the majority's conclusion that Pantoja has failed to allege a violation of section 2923.6 that amounts a cause of action either under Business and Professions

20

Code section 17200 or independently.[6]  To the extent that section 2923.6 created any duty, it described how a mortgage pool servicer should act to maximize the recoveries of all the investors in a loan pool for a loan that is near or in payment default.  In specified circumstances, this objective could be accomplished by offering the borrower a loan modification or workout plan in lieu of foreclosure if otherwise authorized by contract.  Contrary to Pantoja's claim, the statute does not provide that the borrower is a party to the loan pool.  Section 2923.6 imposed no obligation on a loan servicer or holder owed to the borrower.  (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1617; *Pantoja v. Countrywide Home Loans, Inc.* (N.D.Cal. 2009) 640 F.Supp.2d 1177, 1188; *Nool v. Homeq Servicing* (E.D.Cal. 2009) 653 F.Supp.2d 1047, 1052; *Runaj v. Wells Fargo Bank* (S.D.Cal. 2009) 667 F.Supp.2d 1199, 1207; see *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 222 & fn. 9 (*Mabry*).)[7]

---

[6] Section 2923.6 provided in pertinent part:  "(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a polling [*sic*] and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

"(1) The loan is in payment default, or payment default is reasonably foreseeable.

"(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

"(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."

[7] Decisions by the federal district court may be persuasive, though they are not binding on California appellate courts.  (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 69; cf. *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155, fn. 6.)

## C. SECTION 2923.5, SUBDIVISION (A)

I do not agree with the majority's conclusion that the complaint alleged "a clear violation" of the requirement in section 2923.5, subdivision (a) "that lenders contact borrowers, or at least attempt to contact borrowers to discuss foreclosure options 30 days prior to the notice of default." (Maj. opn., *ante*, p. 12.)

Section 2923.5 was a lengthy statute with subdivisions (a) through (j). I understand the statute to have imposed three precedent conditions on the exercise of a private power of sale by a mortgagee, beneficiary, or authorized agent (collectively "creditor") under a mortgage or deed of trust secured by owner-occupied residential property for a mortgage or deed of trust recorded between January 1, 2003, and December 31, 2007. (§ 2923.5, subd. (i).) First, prior to recording a notice of default, in the absence of specified conditions, a creditor either "shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" (§ 2923.5, subd. (a)(2)) or "shall attempt to contact the borrower" (§ 2923.5, subd. (g)(2)(A)) with due diligence as defined in section 2923.5, subdivision (g). Second, a creditor must wait for 30 days after making either contact or a diligent attempt before filing a notice of default. (§ 2923.5, subd. (a)(1).) Third, if a notice of default is filed, it shall include a declaration of compliance with the obligation of attempted contact. (§ 2923.5, subd. (b).)[8]

As this court recently confirmed in *Skov v. U.S. Bank National Assn.* (2012) 207 Cal.App.4th 690, 699, the decision in *Mabry* established that a private right of action arises from a violation of the contact requirements of section 2923.5, subdivision (a).

---

[8] Section 2923.5 subdivision (c) described a special condition for creditors who filed a notice of default prior to enactment of the statute on July 8, 2008. This subdivision is inapplicable by its terms to the notice of default in this case which was filed on October 17, 2008.

(See *Mabry*, *supra*, 185 Cal.App.4th at pp. 221-224.) Therefore, of the three statutory requirements of section 2923.5, I will focus on the requirements of subdivision (a).

Even construing the complaint liberally, I am unable to find an allegation that defendants failed to contact Pantoja as required by subdivision (a)(2) to discuss the topics of his financial situation and alternatives to foreclosure. Paragraph 78 quoted above asserted two violations of section 2923.5, subdivision (a), namely the failure "to assess Cornelio Pantoja's financial condition at least 30 days prior to recording a notice of default" and the failure "to explore options to avoid foreclosure at least 30 days prior to recording a notice of default." Paragraph 55 earlier alleged the legal conclusion that "Civil Code §2923.5(a)(2) requires that the beneficiary or its agent 'shall contact the borrower [Cornelio Pantoja] in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' " Paragraph 56 alleged intentional noncompliance with subdivisions (a) through (c) of the statute in that the notices of default and trustees sale did not contain the declarations required by subdivisions (b) and (c). This is consistent with paragraph 26, which alleged that the declaration filed with the notice of default "was deficient in that Countrywide did not undertake good faith efforts assess [*sic*] Cornelio Pantoja's financial situation and nor [*sic*] to explore options for the plaintiff to avoid foreclosure." Thus, a careful examination of the complaint, including the paragraphs relied upon by the majority, reveals no express factual allegation of a failure to contact.

Since paragraph 55 of the complaint quoted the contact requirements of section 2923.5, subdivision (a)(2), the absence of any express factual allegation of a failure to "contact" Pantoja is conspicuous. It is important to recognize that the original focus of Pantoja's appeal was not that he had stated the private right of action recognized in *Mabry* for failure to contact the borrower prior to filing a notice of default. This was not an argument advanced in his 100-page opening brief. Instead, his focus, as indicated

23

by the quoted allegations, was on the alleged deficiency of the declaration of contact filed with the notice of default as required by section 2923.5, subdivision (b), as well as a breach of the loan pooling statute of section 2923.6.  Two sentences in his reply brief merely asserted:  "Cornelio Pantoja specifically pleads that no one attempted to commence even sham efforts to assess his financial condition or explore options to avoid foreclosure until after the Notice of Trustee Sale had been recorded and the foreclosure sale was weeks away.  [Fn. omitted.]  Even under *Mabry v. Superior Court*, [fn. omitted] this is more than enough to constitute a violation of California Civil Code §2923.5, and a cause of action under California Civil Code §2923.5."

This court requested and received supplemental briefing to clarify Pantoja's claims regarding a *Mabry* cause of action.  Pantoja's supplemental brief directed attention to his allegations of alleged deficiencies in the declaration required by subdivision (b) of section 2923.5.  Pantoja also explained that his amended complaint was filed only 12 days after the *Mabry* opinion.  He asked in his supplemental letter brief for "leave to amend his TAC [third amended complaint] to include a cause of action for a violation of §2923.5 in addition to his unfair business practices cause of action."  In their supplemental brief, defendants responded by asserting, "Pantoja never denied that he had been contacted by the lender or loan servicer about alternatives to foreclosure.  He did not aver that he never received the telephone call that section 2923.5 requires.  Pantoja attacks only the declaration of compliance, not the fact of compliance.[1]"  Footnote 1 of defendants' supplemental brief addressed paragraph 26 of the complaint and asserted: "Pantoja does not deny that he was contacted on those subjects.  He only criticizes the declaration and the extent of Countrywide's efforts."

Although I do not find an allegation in the complaint that defendants failed in fact to contact Pantoja as required by section 2923.5, subdivision (a)(2), I would allow Pantoja an opportunity to amend.  A party may request leave to amend on appeal without

24

having made the request in the trial court.  (Code Civ. Proc., § 472c, subd. (a).) Considering that *Mabry* was decided only 12 days before Pantoja filed his third amended complaint, I would conclude, notwithstanding the already protracted nature of these preliminary proceedings since their commencement on March 30, 2009, that Pantoja should be granted leave to amend to attempt to allege a *Mabry* cause of action.  I express no opinion on the merits of any proposed amendment.


_____
BAMATTRE-MANOUKIAN, J.


25