[No. H036483. Sixth Dist. June 8, 2012.]

ANDREA SKOV, Plaintiff and Appellant, v.
U.S. BANK NATIONAL ASSOCIATION, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Under California Rules of Court, rules 8.1105(c), 8.1100, and 8.1120, only the Introduction, sections I., II.A., D., and III. are certified for publication.

**COUNSEL**

Holland Law Firm and George Holland, Jr., for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Donald J. Querio and Jason M. Julian for Defendant and Respondent.

**OPINION**

**MIHARA, J.**—Plaintiff Andrea Skov filed an action against defendant U.S. Bank National Association (U.S. Bank), as trustee for Credit Suisse First Boston CSFB 2004-AR3, and others in which she alleged improprieties in the nonjudicial foreclosure process involving her residence.[1] The trial court sustained U.S. Bank's demurrer to the second amended complaint and dismissed the action. Skov contends (1) the trial court improperly took judicial notice of various recorded documents and (2) the second amended complaint sufficiently pleaded her causes of action for wrongful foreclosure, unlawful business practices, and declaratory relief. We conclude that the second amended complaint sufficiently pleaded a violation of Civil Code section 2923.5.[2] Accordingly, we reverse the judgment.

## I. Factual and Procedural Background

In December 2003, Skov obtained a loan of $1.5 million, which was secured by a deed of trust on her residential property in Saratoga. The deed of

---

[1] Defendants Gateway Bank, FSB (Gateway), Mortgage Electronic Registration Systems, Inc. (MERS), NDEx West, L.L.C. (NDEx), Tariq Alsami, and Money Loan Financial Services, Inc., are not involved in this appeal.

[2] All further statutory references are to the Civil Code unless otherwise stated.

trust identified Skov as the "Borrower," Gateway as the "Lender," Financial Title Company as "Trustee," and MERS as "acting solely as a nominee for Lender and Lender's successors and assigns." MERS is also identified as "the beneficiary under this Security Instrument." The deed of trust further stated that "Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property."

After Skov stopped making payments pursuant to the terms of the promissory note, NDEx, which identified itself as an agent for MERS, served Skov with a notice of default on June 10, 2009. A declaration of compliance with section 2923.5 was recorded with the notice of default. On July 16, 2009, MERS assigned all beneficial interest in the deed of trust to U.S. Bank. On July 20, 2009, U.S. Bank substituted NDEx as trustee for Financial Title Company. On September 18, 2009, NDEx recorded a notice of trustee's sale, which had been sent to Skov.

On June 10, 2010, Skov filed her second amended complaint and alleged nine causes of action, only three of which are the subject of the present appeal. The first cause of action for wrongful disclosure alleged that there were several improprieties in the assignment, transfer and exercise of the power of sale in the deed of trust. More specifically, Skov alleged that since U.S. Bank and MERS were not assignees of the original note identified in the deed of trust, they did not have the right to exercise the power of sale contained in the deed of trust, and thus U.S. Bank was not entitled to any debt on the property. It was also alleged that U.S. Bank failed to comply with section 2923.5 "until on or about July 10, 2009." The eighth cause of action for unlawful business practices (Bus. & Prof. Code, § 17200 et seq.) alleged that U.S. Bank failed to comply with section 2923.5 because it did not contact or attempt to contact her to discuss her options to avoid foreclosure prior to filing the notice of default. The ninth cause of action for declaratory and injunctive relief sought a determination of the parties' legal rights and duties and that the foreclosure of the property be permanently enjoined. Skov also sought compensatory and punitive damages.

U.S. Bank filed a demurrer to the second amended complaint. In support of its demurrer, U.S. Bank requested judicial notice of the deed of trust, the notice of default, the notice of default declaration, the assignment of the deed of trust from MERS to U.S. Bank, the substitution of trustee, and the notice of trustee's sale. The trial court granted the request for judicial notice, sustained the demurrer without leave to amend, and dismissed the action with prejudice. Skov filed a timely appeal.

## II. Discussion

### A. Standard of Review

In reviewing an order sustaining a demurrer, " 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We may also consider matters that have been judicially noticed. [Citations.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920].) "Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. [Citation.]" (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].)

### B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. Section 2923.5

Skov also contends that the trial court erred in concluding that the declaration of compliance with section 2923.5 conclusively proved such compliance. U.S. Bank argues (1) the second amended complaint does not allege facts showing noncompliance with section 2923.5; (2) section 2923.5 does not create a private claim of action; and (3) the National Bank Act (June 3, 1864, ch. 106, 13 Stat. 99) preempts section 2923.5.

#### 1. Statutory Compliance

■ Section 2923.5, subdivision (a)(2), provides that a mortgagee, trustee, beneficiary, or authorized agent must contact the borrower "in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" or satisfy due diligence requirements before a notice of default is filed.[6] Section 2923.5 does not

---

*See footnote, *ante*, page 690.

[6] Section 2923.5 states in relevant part: "(a)(1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g). [¶] (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the

require the lender to modify the loan. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214 [110 Cal.Rptr.3d 201] (*Mabry*).) The only remedy for noncompliance with the statute is the postponement of the foreclosure sale. (*Ibid.*)

Whether a defendant has complied with a statute is a question of fact. (See *Daum v. SpineCare Medical Group, Inc.* (1997) 52 Cal.App.4th 1285, 1306 [61 Cal.Rptr.2d 260].) Here, the second amended complaint alleged in relevant part: Skov "was fully available to meet with U.S. Bank" to explore foreclosure options; she hired attorneys or other representatives, who telephoned and sent letters to U.S. Bank which were unanswered; U.S. Bank failed and refused to evaluate her finances, to advise her of her right to meet with U.S. Bank to discuss foreclosure avoidance options, and to give her a HUD (United States Department of Housing and Urban Development) telephone number; and U.S. Bank did not comply with the requirements of section 2923.5 because it did not contact her until "on or about July 10, 2009," which was after it had recorded the notice of default on June 12, 2009. In response, U.S. Bank requested judicial notice of the notice of default declaration that stated that the requirements of section 2923.5 had been met on June 9, 2009. However, whether U.S. Bank complied with section 2923.5 is the type of fact that is reasonably subject to dispute, and thus, not a proper subject of judicial notice. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011 )198 Cal.App.4th 256, 266 [129 Cal.Rptr.3d 467].)

U.S. Bank also argues that Skov has failed to allege any facts to support her claim. U.S. Bank asserts that her allegation that she was "fully available" to meet with U.S. Bank does not establish noncompliance with section 2923.5, claiming that "despite Skov's supposed 'full availability,' U.S. Bank *may have complied* with section 2923.5 by attempting, unsuccessfully but in good faith, to contact Skov." (Italics added.) However, as U.S. Bank's argument recognizes, it may not have complied with the statutory requirements. Assuming the truth of Skov's allegations, the issue of compliance

borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically. [¶] (b) A notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h)." A notice of default may also be filed when the borrower has not been contacted if such failure occurred despite the due diligence of the mortgagee, beneficiary, or agent. (§ 2923.5, subd. (g).) Section 2923.5 defines "due diligence." (§ 2923.5, subd. (g).)

cannot be resolved at this stage of the litigation. (*McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 415.)

## 2. Private Right of Action

U.S. Bank next contends that there is no private right of action for noncompliance with section 2923.5. Relying on *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592 [113 Cal.Rptr.3d 498, 236 P.3d 346] (*Lu*), U.S. Bank asserts that *Mabry, supra*, 185 Cal.App.4th 208, which held to the contrary, was wrongly decided.[7]

*Lu, supra*, 50 Cal.4th 592 considered whether Labor Code section 351, which provides that a gratuity is the sole property of the employee to whom it was given, contains a private right to sue. Relying on *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58], *Lu* stated that "whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute. [Citations.]" (*Lu*, at p. 596.) However, when the statutory language does not "strongly and directly indicate that the Legislature intended to create a private cause of action [citation,]" then courts must examine the legislative history. (*Lu*, at p. 597.) Turning to the language of Labor Code section 351, *Lu* noted that it did not expressly state that an employee had a right to bring an action for any violation of the statute. (*Lu*, at p. 598.) *Lu* also observed that related statutes provided that an employer that violated Labor Code section 351 was guilty of a misdemeanor and subject to a fine and/or imprisonment, and that the Department of Industrial Relations was charged with enforcement of the statute. (*Lu*, at p. 598.) After reviewing the legislative history, *Lu* concluded that there was "no clear indication" that the Legislature intended to create a private right to sue under Labor Code section 351. (*Lu*, at pp. 598–601.)

Relying on the Restatement Second of Torts test for determining tort liability for a statutory violation, the plaintiff in *Lu* argued that a private action was implied from the statute. (*Lu, supra*, 50 Cal.4th at pp. 601–602.) "The 'Restatement approach allows the court itself to create a new private right to sue, even if the Legislature never considered creation of such a right, if the court is of the opinion that a private right to sue is "appropriate" and "needed." ' [Citation.]" (*Id.* at p. 602.) The plaintiff further argued that this approach was confirmed in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300 [127 Cal.Rptr.2d 482, 58 P.3d 339]. (*Lu*, at p. 602.) *Lu* rejected the plaintiff's arguments and distinguished *Katzberg* on the ground

---

[7] The California Supreme Court denied review in *Mabry, supra*, 185 Cal.App.4th 208 nine days after it filed *Lu, supra*, 50 Cal.4th 592.

that it involved a private action to remedy a constitutional violation. (*Lu*, at pp. 602–603.) *Lu* also noted that there was no language " 'expressly entitl[ing] individuals to a refund or any other type of payment for violation of the statute.' [Citation.]" (*Lu*, at p. 603, fn. 8.) In response to the plaintiff's arguments that the Department of Industrial Relations had no authority to recover misappropriated gratuities, *Lu* stated that there were other remedies available to the plaintiff, such as an action for conversion. (*Id.* at pp. 603–604.)

Here, as in *Lu*, section 2923.5 does not expressly provide for a private right of action. However, unlike in *Lu*, there are no statutes which provide either a penalty for noncompliance with section 2923.5 or designate any administrative agency with enforcement of the statute. Moreover, unlike in *Lu*, there are no other remedies available to a borrower if there is a violation of the statute.

■ *Mabry* recognized that "courts . . . do not favor constructions of statutes that render them advisory only, or a dead letter. [Citations.]" (*Mabry, supra*, 185 Cal.App.4th at pp. 218–219.) *Mabry* next noted that "statutes on the same subject matter or of the same subject should be construed together so that all the parts of the statutory scheme are given effect. [Citation.]" (*Id.* at p. 219.) *Mabry* then examined section 2924g, subdivision (c)(1), which outlines the grounds for postponing a foreclosure sale, in conjunction with section 2923.5. ■ "Section 2923.5 and section 2924g, subdivision (c)(1)(A), when read together, establish a natural, logical whole, and one wholly consonant with the Legislature's intent in enacting 2923.5 to have individual borrowers and lenders 'assess' and 'explore' alternatives to foreclosure: If section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed. The available, existing remedy is found in the ability of a court in section 2924g, subdivision (c)(1)(A), to postpone the sale until there has been compliance with section 2923.5. Reading section 2923.5 together with section 2924g, subdivision (c)(1)(A) gives section 2923.5 real effect. The alternative would mean that the Legislature conferred a right on *individual* borrowers in section 2923.5 without any means of enforcing that right." (*Mabry*, at pp. 223–224.)

*Mabry* also considered the legislative history of section 2923.5. (*Mabry, supra*, 185 Cal.App.4th at pp. 219–220.) *Mabry* recognized that an early version of section 2923.5 expressly provided for a private right of action, which was not included in the final version, thus suggesting that "the Legislature may not have wanted to have section 2923.5 enforced privately." (*Mabry*, at pp. 219–220.) However, *Mabry* stated that this factor was not dispositive, reasoning that "silence is consonant with the idea that section 2923.5 was the result of a legislative compromise, with each side content to let the courts struggle with the issue." (*Mabry*, at p. 220.)

■ *Mabry* also observed that "compliance with section 2923.5 is necessarily an individualized process. After all, the details of a borrower's financial situation and the options open to a particular borrower to avoid foreclosure are going to vary, sometimes widely, from borrower to borrower. . . . [¶] . . . [I]n order to have its obvious goal of forcing parties to *communicate* (the statutory words are 'assess' and 'explore') about a borrower's situation and the options to avoid foreclosure, section 2923.5 necessarily confers an individual right." (*Mabry, supra*, 185 Cal.App.4th at p. 224.) Thus, *Mabry* noted that *Moradi-Shalal* was distinguishable on the ground that the statute in that case "contemplates a frequent or general business *practice*, and thus its very text is necessarily directed at those who regulate the insurance industry." (*Ibid.*)

■ *Mabry* concluded that two factors outweighed the Legislature's dropping of an express provision for a private right of action. (*Mabry, supra*, 185 Cal.App.4th at p. 225.) "First, the very structure of section 2923.5 is inherently individual. That fact strongly suggests a legislative intention to allow individual enforcement of the statute. The statute would become a meaningless dead letter if no individual enforcement were allowed: It would mean that the Legislature created an inherently individual right and decided there was no remedy at all. [¶] Second, when section 2923.5 was enacted as an urgency measure, there already was an existing enforcement mechanism at hand—section 2924g. There was no need to write a provision into section 2923.5 allowing a borrower to obtain a postponement of a foreclosure sale, since such a remedy was already present in section 2924g." (*Ibid.*) Given that *Lu* is distinguishable from the present case, we find the analysis in *Mabry* persuasive. Accordingly, we conclude that the Legislature intended to allow a private right of action under section 2923.5.

### 3. Preemption

U.S. Bank also contends that the National Bank Act (12 U.S.C. § 21 et seq.) preempts section 2923.5.

■ The National Bank Act "vests national banks . . . with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.' (12 U.S.C. § 24 (Seventh).) Real estate lending is expressly designated as part of the business of banking. [(12 U.S.C. § 371(a).)] [¶] As the agency charged with administering the [National Bank] Act, the Office of the Comptroller of the Currency ('OCC') has the primary responsibility for the surveillance of the 'business of banking' authorized by the Act. [Citation.] To carry out this responsibility, the OCC has the power to promulgate regulations and to use its rulemaking authority to define the 'incidental powers' of national banks beyond those specifically enumerated in

the statute. [Citations.] OCC regulations possess the same preemptive effect as the Act itself. [Citation.]" (*Martinez v. Wells Fargo Home Mortgage, Inc.* (9th Cir. 2010) 598 F.3d 549, 554–555.)

The OCC (Office of the Comptroller of the Currency) regulations, which outline the powers of national banks, include 12 Code of Federal Regulations part 34.4(a). In 2009, it provided that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." More specifically, "a national bank may make real estate loans . . . without regard to state law limitations concerning . . . [¶] . . . [¶] . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages . . . ." (12 C.F.R. § 34.4(a)(10) (2009).) However, "[s]tate laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers: [¶] . . . [¶] . . . Acquisition and transfer of real property." (12 C.F.R. § 34.4(b)(6) (2009).)

■ *Mabry, supra,* 185 Cal.App.4th 208 held that 12 Code of Federal Regulations part 560.2(b)(10) (2010), which is the Office of Thrift Supervision's parallel regulation under the Home Owners' Loan Act[8] (12 U.S.C. § 1461 et seq.), did not preempt Civil Code section 2923.5. As does 12 Code of Federal Regulations part 34.4 (2012), this regulation sets forth which matters are regulated by federal law and which matters are left to state regulation. (*Mabry,* at pp. 228–229.) State laws, including "[r]eal property law," are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations . . . ." (12 C.F.R. § 560.2(c)(2) (2012).) *Mabry* reasoned: "[T]he *process of foreclosure* has traditionally been a matter of state real property law, a point noted both by the United States Supreme Court in *BFP v. Resolution Trust Corporation* (1994) 511 U.S. 531, 541–542 [128 L.Ed.2d 556, 114 S.Ct. 1757], and academic commentators (e.g., Alexander, *Federal Intervention in Real Estate Finance: Preemption and Federal Common Law* (1993) 71 N.C. L.Rev. 293 ['Historically, real property law has been the exclusive domain of the states.' (italics omitted)]), including at least one law professor who laments that diverse state foreclosure laws tend to hinder efforts to achieve banking stability at the national level. (See Nelson, *Confronting the Mortgage Meltdown: A Brief for the Federalization of State Mortgage Foreclosure Law* (2010) 37 Pepp. L.Rev. 583, 588–590 [noting that mortgage foreclosure law

---

[8] The Home Owners' Loan Act preempts state law regarding the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." (12 C.F.R. § 560.2(b)(10) (2012).)

varies from state to state, and advocating federalization of mortgage foreclosure law].) By contrast, we have not been cited to anything in the federal regulations that governs such things as initiation of foreclosure, notice of foreclosure sales, allowable times until foreclosure, or redemption periods. (Though there are commentators, like Professor Nelson, who argue there should be.) [¶] Given the traditional state control over mortgage foreclosure laws, it is logical to conclude that if the Office of Thrift Supervision wanted to include foreclosure as within the preempted category of *loan servicing*, it would have been explicit. Nothing prevented the office from simply adding the words 'foreclosure of' to Regs. section 560.2(b)(10)." (*Mabry*, at pp. 230–231, fn. omitted.)

■ U.S. Bank argues that "[w]hile a state law governing foreclosure procedure may not be preempted, section 2923.5 is not such a law." As *Mabry* noted, however, " '*the States have created diverse networks of judicially and legislatively crafted rules governing the foreclosure process, to achieve what each of them considers the proper balance between the needs of lenders and borrowers. . . .* [A]bout half of the States also permit foreclosure by exercising a private power of sale provided in the mortgage documents. . . . Foreclosure laws typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures. . . . (BFP v. Resolution Trust Corporation, supra, 511 U.S. at pp. 541–542)' " (Mabry, supra, 185 Cal.App.4th at pp. 230–231, fn. 17.) By requiring a lender to contact a borrower prior to filing a notice of default to "assess" his financial situation and to "explore" options to avoid foreclosure, section 2923.5 merely sets forth one of the steps in foreclosure proceedings. Moreover, given that section 2923.5 does not require the lender to modify the loan and a lender's failure to comply with the statute is limited to providing borrowers with more time, it only incidentally affects the lending operations of a bank.[9]

---

[9] One federal district court has held that section 2923.5 is preempted by the National Bank Act. (*Acosta v. Wells Fargo Bank, N.A.* (N.D.Cal., May 21, 2010, No. C 10-991 JF (PVT)) 2010 WL 2077209.) Others have reached the same result under the Home Owner's Loan Act. (*Gonzalez v. Alliance Bancorp* (N.D.Cal., Apr. 19, 2010, No. C 10-00805 RS) 2010 WL 1575963; *Murillo v. Lehman Brothers Bank FSB* (N.D.Cal., July 17, 2009, No. C 09-00500 JW) 2009 WL 2160578; *Odinma v. Aurora Loan Services* (N.D.Cal., Mar. 23, 2010, No. C-09-4674 EDL) 2010 WL 1199886; *Parcray v. Shea Mortgage, Inc.* (E.D.Cal., Apr. 23, 2010, No. CV-F-09-1942 OWW/GSA) 2010 WL 1659369; *Quintero Family Trust v. OneWest Bank, F.S.B.* (S.D.Cal., June 25, 2010, No. 09-CV-1561-IEG (WVG)) 2010 WL 2618729; *DeLeon v. Wells Fargo Bank, N.A.* (N.D.Cal. 2010) 729 F.Supp.2d 1119.) These cases reason that section 2923.5 is preempted by federal law because it involves the processing and servicing of the plaintiffs' mortgages. This court is not bound by the decisions of lower federal courts interpreting federal law. (*People v. Williams* (1997) 16 Cal.4th 153, 190 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

■ U.S. Bank claims that section 2923.5 "seeks to compel loan modifications as a means of avoiding foreclosures and curbing high foreclosure rates, mandates specific disclosures to borrowers, and requires burdensome reviews of borrower financials and proposed loan modifications" thus regulating "loan servicing and processing . . . ." As *Mabry* pointed out, however, section 2923.5 must be very narrowly construed to avoid federal preemption. (*Mabry, supra,* 185 Cal.App.4th at pp. 231–232.)  ■  Section 2923.5 does not require the lender "to consider a whole new loan application or take detailed loan application information" from the borrower. (*Mabry,* at p. 232.) Moreover, the exploration of options to avoid foreclosure "must necessarily be limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place." (*Ibid.*) We find *Mabry*'s analysis convincing. Thus, since the federal regulation of national banks is essentially the same as that of federal savings associations, we conclude that section 2923.5 is not preempted by federal law.

■ In sum, there is a factual issue as to whether there was compliance with the requirements of section 2923.5 prior to the filing of the notice of default. Accordingly, the trial court erred in sustaining the demurrer.

### III.  Disposition

The judgment is reversed. The parties shall bear their own costs on appeal.

Premo, Acting P. J., and Elia, J., concurred.