Filed 8/8/14  Simmons v. Bank of America CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| WADE SIMMONS et al., | C071445 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0029696) |
| v. | |
| BANK OF AMERICA et al., | |
| Defendants and Respondents. | |

Homeowners who defaulted on their home loan seek to abort foreclosure proceedings initiated by a substituted trustee, contending the notice of default is void because the bank failed to contact them to assess and explore alternatives to foreclosure as required by Civil Code section 2923.5 and defendants lack standing to foreclose since they are not the true beneficiaries under the deed of trust.  Although we do not agree that defendants are without authority to foreclose under the deed of trust, we must reverse the judgment to the extent it is based on the order sustaining the demurrer to the cause of

1

action alleging noncompliance with the mandatory requirements set forth in section 2923.5.

## FACTUAL ALLEGATIONS

In August 2005 plaintiffs Wade and Teri Simmons obtained an adjustable-rate mortgage for $930,000 from MortgageIt, Inc. (MortgageIt), secured by a deed of trust on their property in Loomis. On the deed of trust, United Capital Title Insurance Company is named as the trustee and Mortgage Electronic Registration Systems, Inc. (MERS), is named as the beneficiary.

There appear to be two assignments of the deed of trust. In the first, recorded on November 17, 2011, MERS assigned all beneficial interest in the deed of trust to defendant The Bank of New York Mellon as trustee for the benefit of the holders of various certificates. MERS recorded a second assignment on November 21, 2011, wherein it again assigned and transferred to "The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWalt Inc. Alter-Native Loan Trust 2005-51, Mortgage Pass Through Certificates, Series 2005-51" (Mellon) all beneficial interest under plaintiffs' deed of trust. On that same day, MERS, as the beneficiary under the deed of trust, substituted ReconTrust Company, N.A. (ReconTrust Co.), in place of United Capital Title Insurance Company as the trustee.

ReconTrust Co. thereafter recorded a notice of default alerting plaintiffs that their property was in foreclosure and the amount of their past-due payments plus permitted costs and expenses amounted to $129,633.20 as of November 16, 2011. The notice of default advised plaintiffs to contact Mellon to arrange for payment to stop foreclosure or to determine the precise amount due. A form declaration by Leonard A. Abraham, a mortgage servicing specialist for Bank of America, N.A. (Bank of America), was attached to the notice of default and stated, under penalty of perjury, that he "tried with due diligence to contact the borrower in accordance with California Civil Code

2

Section 2923.5." The declaration did not provide any facts to support this conclusion, such as the specifics of any attempt to contact plaintiffs.

In their first amended complaint for wrongful foreclosure, unlawful, unfair, and fraudulent business practices, and declaratory relief, plaintiffs allege that none of the defendants or their agents, including Bank of America as servicer of their loan, contacted them 30 days prior to filing the notice of default to discuss options to avoid foreclosure. More specifically, they allege that not one of the defendants or their agents provided them with the toll-free telephone number to a counseling agency certified by the United States Department of Housing and Urban Development (HUD). Nor did defendants send them notification by certified mail or contact them, despite the fact plaintiffs remained available to meet with any defendants or anyone acting on their behalf, either in person or telephonically, to discuss foreclosure avoidance options.

Plaintiffs sought to enjoin the foreclosure and sale of their property. Defendants Bank of America (the servicer), Mellon (the trustee), and MERS (the beneficiary) demurred to the first amended complaint. The trial court sustained defendants' demurrer without leave to amend.

# I

The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).) We must assume the truth of all properly pleaded facts as well as those that are judicially noticeable. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501.) We are not concerned with the plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. Our review is de novo. (*Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.)

Where, as here, the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff can cure the defect with

3

an amendment. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506.) If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion. The plaintiff bears the burden of proving an amendment would cure the defect. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1153.)

## II

This case is identical in essential respect to *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047 (*Intengan*). The underlying claims are the same, and many of the defendants are the same. As here, the court in *Intengan* reversed the judgment of dismissal because the plaintiff stated a viable cause of action that the defendants had not satisfied their statutory duty to explore alternatives to foreclosure at least 30 days before recording a notice of default. Because the Civil Code section 2923.5 issue in the case before us is indistinguishable from *Intengan*, we will draw heavily from that court's cogent analysis.

The crucial fact in both cases is that the plaintiffs sought injunctive relief before their homes were sold. The defendants urged the court in *Intengan*, as defendants urge us here, to uphold the demurrer because the plaintiffs failed to tender full payment of their indebtedness. It is true that the failure to tender, as a general rule, precludes a homeowner from challenging the foreclosure of his or her property. (*Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117.) The court in *Intengan*, however, adopted the view of other courts that the tender rule did not apply to actions preceding the foreclosure sale. "While the tender requirement may apply to causes of action to *set aside* a foreclosure sale, a number of California and federal courts have held or suggested that it does not apply to actions seeking to *enjoin* a foreclosure sale—at least where the lenders had allegedly not complied with a condition precedent to foreclosure." (*Intengan*, *supra*, 214 Cal.App.4th at pp. 1053-1054.) We agree that tender is not a bar to plaintiffs' presale effort to enforce compliance with the law.

4

Civil Code section 2923.5's directions are plainly stated: "(a)(1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

"(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by [HUD] to find a HUD-certified housing counseling agency. Any meeting may occur telephonically."

Defendants seek to avail themselves of the due diligence exception to assessing and exploring the homeowners' options to avoid foreclosure. Their duties are even more precisely defined as follows: "(g) A notice of default may be filed pursuant to Section 2924 when a mortgagee, beneficiary, or authorized agent has *not contacted* a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent. For purposes of this section, 'due diligence' shall require and mean all of the following:

"(1) A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

5

"(2)(A) After the letter has been sent, the mortgagee, beneficiary, or authorized agent shall attempt to contact the borrower by telephone at least three times at different hours and on different days.  Telephone calls shall be made to the primary telephone number on file.

"(B) A mortgagee, beneficiary, or authorized agent may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgagee, beneficiary, or authorized agent.

"(C) A mortgagee, beneficiary, or authorized agent satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

"(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgagee, beneficiary, or authorized agent shall then send a certified letter, with return receipt requested.

"(4) The mortgagee, beneficiary, or authorized agent shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

"(5) The mortgagee, beneficiary, or authorized agent has posted a prominent link on the homepage of its Internet Web site, if any . . . ."  (Civ. Code, § 2923.5, subd. (g), italics added.)

"If [Civil Code] section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed."  (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 223 (*Mabry*).)  The remedy for noncompliance is to postpone the sale.  (*Ibid.*)

Defendants insist that the declaration they filed with the notice of default satisfied the rigid due diligence requirements set forth in Civil Code section 2923.5,

6

subdivision (g). Not so, according to the court in *Intengan*. "Civil Code section 2923.5 requires not only that a declaration of compliance be attached to the notice of default, but that the bank actually perform the underlying acts (i.e., contacting the borrower or attempting such contact with due diligence) that would constitute compliance. While judicial notice could be properly taken of the *existence* of Jones's declaration, it could not be taken of the facts of compliance asserted *in* the declaration, at least where, as here, Intengan has alleged and argued that the declaration is false and the facts asserted in the declaration are reasonably subject to dispute." (*Intengan*, *supra*, 214 Cal.App.4th at p. 1057.)

Moreover, the court pointed out that the so-called "facts" set forth in the judicially noticed declaration contained only a conclusory assertion that the bank had complied with the statute. "[N]owhere does it state when, how, or by whom the elements of due diligence were accomplished, or how the declarant knew if they were. More importantly, the most these averments could do is create a factual dispute as to whether respondents complied with the statute." (*Intengan*, *supra*, 214 Cal.App.4th at p. 1058, fn. omitted.)

Defendants' declaration is almost identical to the declaration Bank of America attached to the notice of default in *Vong v. Bank of America, N.A.* (E.D.Cal. May 22, 2013, No. Civ. S-12-2860 LKK/DAD) 2013 U.S.Dist. Lexis 72780 (*Vong*), which states, in its entirety: " 'Bank of America Home Loan . . . tried with due diligence to contact the borrower in accordance with *California Civil Code Section 2923.5*.' " (*Vong*, at p. *26.) The *Vong* court concluded, "the declaration - which is itself purely a statement of conclusion - at most creates a factual issue which should not be resolved on this dismissal motion. The declaration sets forth no facts to support its 'due diligence' conclusion, even though the defendant is the one in a position to know whether any of the elements of 'due diligence' were actually carried out." (*Vong*, at pp. *26-*27, fn. omitted.)

The same is true in the case before us. A Leonard Abraham averred that he had tried with due diligence to contact the borrower, but he did not provide any details,

7

consistent with the statutory requirements, as to the number of telephone calls he, or someone else from the bank, placed; when they were placed; or whether a letter was sent by certified mail. Indeed, we are left to guess just what conduct he asserts constitutes due diligence.

That is not to say ReconTrust Co. did not exercise due diligence before recording the notice of default. But for purposes of demurrer, plaintiffs have alleged that ReconTrust Co. did not contact them, they were never contacted telephonically or by certified letter, and they were never given the contact information required by statute. Thus, they have adequately stated a cause of action for wrongful foreclosure based on the purported failure to comply with Civil Code section 2923.5 before recordation of the notice of default, and they have created a factual dispute sufficient to withstand demurrer. It was therefore error to sustain the demurrer.

But defendants object to a reversal in the absence of a showing of prejudice. Because their property has not been sold, in defendants' view, plaintiffs have suffered no harm. "However, this is a claim to enjoin the foreclosure, and to avoid the harm that would occur if plaintiff lost his house." (*Vong*, *supra*, 2013 U.S.Dist. Lexis 72780 at p. *28.) Plaintiffs' prophylactic strategy to secure a postponement until ReconTrust Co. complies with Civil Code section 2923.5 obviates their burden to demonstrate prejudice. They seek an injunction, and the looming sale of their property constitutes sufficient risk of losing their house.

Plaintiffs' ability to state a viable cause of action for a violation of Civil Code section 2923.5 means that there is a Business and Professions Code section 17200 claim as well. (*Vong*, *supra*, 2013 U.S.Dist. Lexis 72780 at pp. *34-*35.) "Plaintiff asserts a claim under *Cal. Bus. & Prof. Code § 17200, et seq.*, which provides a remedy for 'any unlawful . . . business act.' Defendant moves to dismiss on the ground that plaintiff has not alleged any wrongful conduct.

8

"Defendant is wrong. Plaintiff has properly alleged that defendant violated *Cal. Civ. Code § 2923.5*. That is enough to survive dismissal. *Skov v. U.S. Bank Nat. Assn., 207 Cal. App. 4th 690, 694, 143 Cal. Rptr. 3d 694 (6th Dist. 2012)* (reversing demurrer for *Section 17200* claim which was based upon the allegation that 'U.S. Bank failed to comply with *section 2923.5* because it did not contact or attempt to contact her to discuss her options to avoid foreclosure prior to filing the notice of default')." (*Vong*, *supra*, 2013 U.S.Dist. Lexis 72780 at pp. *34-*35.)

The question next posed is what is the appropriate remedy? In *Intengan*, the court simply reversed the judgment of dismissal and reversed the order sustaining the demurrer, "solely as to a cause of action for wrongful foreclosure based on allegations that respondents did not comply with Civil Code section 2923.5." (*Intengan*, *supra*, 214 Cal.App.4th at p. 1060.) But on similar facts posed in writ proceedings in *Mabry*, *supra*, 185 Cal.App.4th 208, the Fourth District Court of Appeal remanded the case to the trial court for an evidentiary hearing. "We have already recounted the conflict in the evidence before the trial court regarding whether there was compliance with section 2923.5. Rarely, in fact, are stories so diametrically opposite: According to the Mabrys, there was no contact at all. According to Aurora, not only were there numerous contacts, but the Mabrys even initiated a proposal by which their attorney would buy the property.

"Somebody's not telling the truth, but appellate courts do not resolve conflicts in evidence. Trial courts do. [Citation.] This case will obviously have to be remanded for an evidentiary hearing." (*Mabry*, *supra*, 185 Cal.App.4th at pp. 235-236.)

Our case, like *Intengan*, does not involve writ proceedings. Here, as in *Intengan*, we must reverse the judgment to the extent it is based on the order sustaining the demurrer to the cause of action alleging noncompliance with the mandatory requirements set forth in Civil Code section 2923.5. Plaintiffs, by alleging that they were not contacted by telephone or by mail before the notice of default was recorded, have alleged sufficient

9

facts to state a cause of action under section 2923.5. For purposes of reviewing a demurrer without leave to amend, that ends our inquiry.

The only remedy for violation of Civil Code section 2923.5 is to postpone the foreclosure. (*Mabry*, *supra*, 185 Cal.App.4th at p. 223.) "The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure *prior* to a notice of default. It is enforced by the postponement of a foreclosure sale." (*Mabry*, at p. 225.) "[T]he *only* remedy provided is a postponement of the sale before it happens." (*Id*. at p. 235.)

Under the facts presented, plaintiffs have not yet suffered a foreclosure and may not in the future. For that reason, it would be premature to consider plaintiffs' remaining claims for wrongful foreclosure.

### DISPOSITION

The judgment is reversed to the extent it is based on the order sustaining the demurrer to the cause of action alleging noncompliance with the mandatory requirements set forth in Civil Code section 2923.5. In all other respects, the judgment is affirmed. Plaintiffs shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


                                                            RAYE            , P. J.



We concur:



        MAURO           , J.



        DUARTE          , J.



10