Filed 2/25/15  Rosenberg v. Chase Bank CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD ROSENBERG,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>CHASE BANK, N.A. et al.,<br><br>          Defendants and Respondents. | A138765<br><br>(Sonoma County<br>Super. Ct. No. SCV-250972) |

**I.**

**INTRODUCTION**

Richard Rosenberg (appellant) appeals from a dismissal of his third amended complaint (TAC) after the trial court sustained a demurrer filed by JPMorgan Chase Bank, N.A. (Chase) and California Reconveyance Company (CRC) (collectively respondents).[1]  On appeal, appellant's sole claim is that the trial court erred in dismissing his TAC because he stated a cause of action for wrongful foreclosure based on Chase's failure to communicate with him at least 30 days prior to filing the notice of default as required by Civil Code section 2923.5.[2]  We disagree and affirm.

---

[1]  Respondent Chase notes it was erroneously sued as "Chase Bank, N.A.," and California Reconveyance Company notes it was erroneously sued as "California Reconveyance Corporation."

[2]  All statutory references are to the Civil Code.  Further references to section 2923.5 are to the 2008 version of the statute, which is the version that applies to the claims made in this case.

1

## II.

## FACTS AND PROCEDURAL HISTORY[3]

Appellant is presently the owner of a three-unit real property located in Healdsburg, California (the property), which he obtained in 2006. The property was purchased through Washington Mutual Bank, N.A., predecessor-in-interest and an agent, affiliate, or subsidiary of respondent Chase. In connection with the loan, appellant executed a promissory note in the sum of $1 million, which was secured with a deed of trust in the property. CRC is the trustee under the deed of trust.

Due to the severe downturn in the economy in mid-2010, appellant was unable to make his mortgage payments to Chase. Appellant applied for a loan modification through the Home Affordable Foreclosure Alternatives (HAFA) program. Appellant submitted the documentation for the HAFA program by December 2010. He acknowledges he spoke with Aaron McCarthy at Chase, who advised him the application was complete, and Chase would contact him shortly.

On or about February 15, 2011, CRC recorded a notice of default in the Sonoma County Recorder's Office. At this point, appellant was $42,082.26 in arrears on his mortgage. On or about March 4, 2011, appellant received a letter from Chase advising him that he could also be eligible for a new program to sell the property through a short sale. Appellant contacted Chase and advised it that he would like to pursue a short sale. A buyer was located for the first trust deed on the property with a standing offer of $650,000. Chase advised appellant that it would consider the short sale and would contact him with a response after receiving the necessary documents. Appellant's agent, Alan X. Reay, a licensed real estate broker, provided Chase with what he believed was all of the necessary paperwork to evaluate the short sale.

---

[3] Because this appeal is taken from a judgment after an order sustaining a demurrer without leave to amend, the relevant facts are drawn from the operative TAC, as well as from certain publicly recorded documents of which the trial court took judicial notice pursuant to respondents' request. Appellant does not challenge the propriety of the trial court's decision to take judicial notice of said documents.

On or about April 27, 2011, Chase sent appellant a notice that his HAFA application was denied because the unpaid principal balance on the loan exceeded the threshold amount for consideration under the HAFA program, and because Chase had been unable to verify his claim that he occupied at least one of the three units of the property.

Between May 2011 and December 2011, appellant, his real estate agent, and appellant's counsel contacted Chase dozens of times to follow up on the rejection of his HAFA application, and get an update on Chase's consideration of the short sale offer. Chase was unresponsive to these inquiries.

On or about December 19, 2011, CRC moved forward with the nonjudicial foreclosure proceedings by recording a notice of trustee's sale in the Sonoma County Recorder's Office, scheduling a sale date in January 2012. On December 27, 2011, after the property had been set for a foreclosure sale, Chase sent appellant notice that it could not evaluate the short sale because it lacked sufficient documentation. The written communication contained no explanation of what documentation was missing or needed.

After receipt of the notice of sale, appellant and his counsel repeatedly contacted Chase to seek further explanation regarding Chase's December 27, 2011 communication. Finally, on January 10, 2012, appellant's counsel spoke with Mr. Helix, a representative for Chase. Mr. Helix advised appellant's counsel that Chase was willing to accept the $650,000 short-sale offer, but the third-party lienholder would not release the lien, which was preventing the sale. Mr. Helix advised appellant's counsel that Chase would not postpone the foreclosure sale to allow appellant time to attempt to clear up the problems preventing the short sale.

Appellant then initiated this litigation by filing a complaint on the eve of the foreclosure sale, January 18, 2012. Respondents filed a series of demurrers, which were granted with leave to amend. The operative complaint for our purposes is the TAC, and the only cause of action relevant to this appeal is appellant's first cause of action alleging

3

section 2923.5 was violated.[4]  At all relevant times, in pertinent part, this statute provided that no less than 30 days before they record a notice of default a "mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  (§ 2923.5, subd. (a)(2).)  The statute also required a notice of default to include "a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower" or "has tried with due diligence to contact the borrower as required by this section . . . ."  (§ 2923.5, subd. (b).)  In his TAC, appellant alleged Chase "has not even minimally complied with the requirements" of section 2923.5 and "cannot, therefore, proceed with a foreclosure action . . . ."

After hearing oral argument, the trial court granted respondents' demurrer to the TAC without leave to amend.  In its final order and judgment of dismissal signed on February 25, 2013, the court found in pertinent part:  "The [TAC] does not state a cause of action for a violation of [Civil Code section] 2923.5.  The [TAC] alleges that the parties have, in fact, been in communication.  The [TAC] simply argues that the communication was 'insufficient' and that the Plaintiff did not like the outcome of the communication . . . .  [¶] . . . Under the current reading of [Civil Code section] 2923.5, this communication was probably sufficient to satisfy the statute.  The Defendants had no other obligation . . . ."  This appeal followed.

---

[4]  On appeal, appellant does not contest the court's ruling granting respondents' demurrers to the second cause of action (breach of covenant of good faith and fair dealing), third cause of action (declaratory relief), and fourth case of action (injunctive relief).  The only cause of action appellant attempts to support is a claim for violation of section 2923.5.  Accordingly, we deem the other causes of action to be abandoned and we will not address them further.  (*Bagley v. International Harvester Co.* (1949) 91 Cal.App.2d 922, 924 [where demurrer is sustained without leave to amend, appellant's failure to advance arguments in connection with one of several causes of action purportedly stated in complaint deemed an abandonment of such cause of action]; see also *In re Sade C.* (1996) 13 Cal.4th 952, 994 [issues not raised in an appellant's brief are deemed waived or abandoned].)

# III.

# DISCUSSION

## A.  Standard of Review

In reviewing an order sustaining a demurrer, we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, assuming such facts are true for this purpose.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Skov v. U.S. Bank National Assn.* (2012) 207 Cal.App.4th 690, 695 (*Skov*).)  " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed."  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]'. . ."  (*Adelman v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 352, 359, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]"  (*Blank*, *supra*, 39 Cal.3d at p. 318; *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091.)

## B.  Section 2923.5's Requirements

Section 2923.5 provides the procedure that a mortgagee, trustee, beneficiary, or authorized agent must follow before a notice of default can be filed pursuant to section 2924.  As noted, at the time in question section 2923.5, subdivision (a) provided that, unless a specified exception applies, a lender must *either* "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" (§ 2923.5, subd. (a)(2)), *or* "satisfy[]" specified "due diligence requirements" in an attempt to make such contact (§ 2923.5, subd. (a)(1)).  Section 2923.5, subdivision (b) provides that, before it may record a notice of default, a lender must include in the notice of default a "declaration" that the lender "has contacted

5

the borrower, has tried with due diligence to contact the borrower . . . or that no contact was required . . . ."**5** "A borrower may state a cause of action under section 2923.5 by alleging the lender did not actually contact the borrower or otherwise make the required efforts to contact the borrower despite a contrary declaration in the recorded notice of default. [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1494 (*Rossberg*).)

Section 2923.5's requirements are narrowly construed. The court in *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208 (*Mabry*) explained that section 2923.5 "is not preempted by federal banking regulations because it *is*, or can be construed to be, very narrow . . . . [T]here is no *right*, for example, under the statute, to a loan modification." (*Mabry*, *supra*, at p. 231, original italics.) "[T]o the degree that the words 'assess' and 'explore' can be narrowly or expansively construed, they must be narrowly construed in order to avoid crossing the line from state foreclosure law into federally preempted loan servicing. Hence, any 'assessment' must necessarily be simple— something on the order of, 'why can't you make your payments?' The statute cannot require the lender to consider a whole new loan application or take detailed loan application information over the phone. . . . [¶] . . . [T]he same goes for any 'exploration' of options to avoid foreclosure. Exploration must necessarily be limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place."

---

**5** Section 2923.5 was amended, effective January 1, 2013, to make slight changes to subdivisions (a) and (b) that do not alter the substance of the provisions. However, the amendments added requirements, including that a lender not record a notice of default or notice of sale or conduct a trustee's sale until the mortgage servicer makes a written determination that the borrower is not eligible for a first lien modification and a specified appeal period has expired, the borrower does not accept an offered modification, or the borrower defaults on a modification; and that the mortgage servicer provide the borrower with a written notice identifying the reasons for denial. (§ 2923.6, subds. (c), (d), (e), (f); Stats. 2012, ch. 86, § 7, eff. Jan. 1, 2013, repealed Jan. 1, 2018.) These new requirements are not applicable to the present case.

(*Id.* at pp. 231-232; accord, *Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1098 ["While section 2923.5 requires the borrower to discuss options to prevent foreclosure, it does not require that any loan modification take place."].)  Consequently, section 2923.5 does not require "the lender . . . to become a loan counselor," and it does not require the lender to actually grant a loan modification or engage in protracted communications regarding the same.  (*Mabry*, *supra*, at p. 232.)

Under section 2923.5, "[t]he only remedy for violation of this statute is postponement of a foreclosure sale until there has been compliance with the statute. [Citations.]"  (*Argueta v. J.P. Morgan Chase* (E.D. Cal. 2011) 787 F.Supp.2d 1099, 1107; accord *Mabry*, *supra*, 185 Cal.App.4th at p. 214 ["[T]he remedy for noncompliance is a simple postponement of the foreclosure sale, nothing more."].)

## C.  Allegations in TAC Shows Respondents Met Section 2923.5's Requirements

In this appeal, appellant claims "[t]he trial court's dismissal of [his] TAC should be overturned because [he] properly plead a cause of action for wrongful foreclosure based on Chase's failure to communicate as required by Civil Code section 2923.5 . . . ."  However, appellant's ability to state a claim under section 2923.5 is refuted by appellant's own admissions in the TAC.  In the TAC, appellant alleges he "applied for a loan modification through the [HAFA] program by December 2010"—which was several months before the notice of default was recorded.  He admits he then "spoke with Aaron McCarthy at Chase who advised him the application was complete, [he] did not need to do anything further, and Chase would contact him shortly."  The "Declaration of Compliance" attached to the notice of default states that "[t]he mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5."

Because appellant's own TAC contains an express admission that he applied for a modification of the loan (loan modification being a common alternative to foreclosure) and spoke to a Chase representative concerning his application *months* before

7

respondents initiated foreclosure proceedings against him, his bald assertion that section 2923.5 was violated cannot state a claim. (See, e.g., *Rossberg*, *supra*, 219 Cal.App.4th at pp. 1494-1495 [affirming the sustaining of a demurrer where the plaintiffs alleged they "had multiple telephone conversations with BofA regarding a possible loan modification during July 2009, which was more than 30 days before [the trustee] recorded the notice of default . . . ."]; *Ortiz v. Accredited Home Lenders, Inc*. (S.D. Cal. 2009) 639 F.Supp.2d 1159, 1165-1166 [dismissing § 2923.5 claim where plaintiffs did not dispute contact was made and declaration of compliance indicated plaintiffs were contacted as required by the statute].)

In an attempt to raise a triable issue of fact that would defeat respondents' demurrer, appellant relies on *Skov*, *supra*, 207 Cal.App.4th 690, and a case cited for the first time at oral argument, *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047 (*Intengan*). However, in stark contrast to both *Skov* and *Intengan*—where the courts were faced with a dispute or potential dispute as to whether the lender had actually contacted the borrower *before* recording the notice of default—there is no such dispute in this case. (See *Skov*, *supra*, at p. 696 [borrower alleged that lender did not contact her at all to discuss options to foreclosure until after the notice of default was recorded]; *Intengan*, *supra*, at p. 1057 [borrower disputed the declaration of compliance attached to the notice of default, in which bank declared it diligently attempted to contact the borrower].) These cases are distinguishable on their facts because appellant *admits* in the TAC that he applied for a loan modification under the HAFA program and spoke with a Chase representative about that loan modification more than 30 days before the notice of default was recorded. As we have seen, such contact satisfies section 2923.5's requirements.

Appellant argues on appeal that it is not the "fact" of pre-foreclosure contacts that matters for purposes of assessing compliance with section 2923.5, but the "quality of those contacts . . . ." (Original underscoring omitted.) He contends that the "quality" of his communications with Chase was "deficient" because Chase did not evaluate his loan modification application or his subsequent short sale application "in any meaningful way." But to examine the acknowledged contacts in order to determine the degree of

8

consideration that was in fact given to modifying the loan would be to cross the line from a procedural step in a foreclosure action—permitted under *Mabry*'s analysis—to preempted loan servicing. As *Mabry* explained, in order to "avoid bumping into federal law" a lender need only "assess" the borrower's financial situation, in the narrow sense of inquiring why the borrower cannot make payments, and need only "explore" options for the borrower to avoid foreclosure, in the similarly narrow sense of informing the borrower of the traditional means of avoiding foreclosure (including, for example, deeds in lieu of foreclosure, workouts, and short sales). (*Mabry*, *supra*, 185 Cal.App.4th at pp. 226, 232.) As explained by *Mabry,* such an assessment and exploration need not be extensive nor is it required to amount to loan counseling. (*Id*. at pp. 225, 232.)

As succinctly stated in *Davenport v. Litton Loan Servicing, LP* (N.D.Cal.2010) 725 F.Supp.2d 862 (*Davenport*), section 2923.5 merely "contemplates contact and some analysis of the borrower's financial situation." (*Davenport*, *supra*, at p. 877.) Consequently, appellant is not entitled to pursue relief against respondents for a violation of section 2923.5 where he acknowledges he "spoke with Aaron McCarthy at Chase" about his application "for a loan modification through the [HAFA] program" at least 30 days before the notice of default was filed.[6]

---

[6] This allegation in appellant's TAC does not specify whether it was appellant or Aaron McCarthy, the bank representative, who initiated the contact. At oral argument, appellant posited the theory for the first time on appeal that section 2923.5 would be violated if the borrower was the party who initiated the communication. Appellant cannot revive a claim under section 2923.5 at the eleventh hour by making bare, unsupported allegations with no legal or factual basis. (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1326, fn. 10.) In any event, we point out the "obvious goal" of section 2923.5 is to "forc[e] the parties to *communicate* (the statutory words are 'assess' and 'explore') about a borrower's situation and the options to avoid foreclosure . . . ." (*Mabry*, *supra*, 185 Cal.App.4th at p. 224, original italics.) Although we need not decide the question, given the fact the goal of section 2923.5 was undeniably fulfilled in this case, the identity of the party who initiated this communication appears inconsequential.

**D. Failure to Amend**

The trial court sustained respondents' demurrer to the TAC *without* leave to amend. "The burden of proving [the] reasonable possibility [of an amendment] is squarely on the plaintiff. [Citation.]" (*Blank*, *supra*, 39 Cal.3d at p. 318.) Appellant has failed to show how the TAC could be amended to allege a viable cause of action under section 2923.5. Thus, the trial court did not abuse its discretion when it did not give appellant another opportunity to amend his complaint.

## IV.

## DISPOSITION

The judgment of dismissal is affirmed. Respondents are entitled to their costs on appeal.

_____
RUVOLO, P. J.

We concur:


_____
RIVERA, J.


_____
BOLANOS, J.*


\* Judge of the San Francisco City and County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.